SHANKS v. DURGIS.

1. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—MINOR GUEST PASSENGER.

Contributory negligence of driver of automobile cannot be imputed to guest passenger who is a minor in her action against another motorist.

2. INFANTS—COMPROMISE AND SETTLEMENT—COURTS.

Judgment for infant entered pursuant to agreement to settle claim for injuries arising out of automobile accident would be set aside in suit for such purpose had there been no judicial investigation as to merits of her claim.

3. COMPROMISE AND SETTLEMENT—AUTOMOBILES—FRAUD.

In suit by minor by her next friend to set aside settlement agreement as to damages arising out of automobile accident, made as result of alleged fraudulent representations of insurance adjuster, and judgment entered pursuant thereto by justice of the peace at agreed amount after he had interrogated plaintiff and her mother as to nature of injuries at such informal proceedings as were had before him and largely confined his attention to the matter of amount of damages, liability not being denied, dismissal of bill *held*, proper.

4. JUSTICES OF THE PEACE—COMPROMISE AND SETTLEMENT—INFANTS —IMPUTED NEGLIGENCE.

In suit to set aside judgment of justice of the peace entered pursuant to settlement agreement between infant, by next friend, and defendants, refusal to permit cross-examination of justice on matter of imputed negligence *held*, not error where such was not in issue in proceedings before him.

5. APPEAL AND ERROR—COMPROMISE AND SETTLEMENT—FRAUD—INFANTS.

In infant's suit to set aside settlement agreement for injuries arising out of automobile accident because of alleged fraud, such claim is *held*, inferentially denied by finding that settlement was fair.

Appeal from Huron; Boomhower (Xenophon A.), J. Submitted October 8, 1935. (Docket No. 15, Calendar No. 38,503.) Decided December 10, 1935.

Bill by Zelma G. Shanks, by Charles Herbert, her next friend, against Allan Durgis and John A. Howard to set aside a settlement agreement and judgment entered thereon by justice of the peace. Bill dismissed. Plaintiff appeals. Affirmed.

*Hugh K. Davidson* and *David E. Kull* (*Walter M. Nelson*, of counsel), for plaintiff.

*Kerr, Lacey & Scroggie*, for defendants.

BUTZEL, J. Zelma G. Shanks was injured on July 16, 1933, while a guest passenger, in an automobile collision. As she was only 19 years of age, contributory negligence, if any, of the driver of the car in which she was riding cannot be imputed to her. *Donlin* v. *Railway*, 198 Mich. 327 (17 N. C. C. A. 964). We are presented with but few facts in regard to the accident, as the liability of the defendants is not the real issue in the instant suit brought by Miss Shanks, by her next friend, to set aside a settlement agreement and judgment. Miss Shanks claims that the accident occurred through the negligence of defendants, that she was severely injured, and permanently disfigured by deep scars on her face and body and that she still is suffering from severe pain and numbness; that while she was in the hospital after the accident, Roy J. Knott, representing the insurance company carrying the public liability risk on defendant Howard's car, interviewed her and her mother in reference to a settlement, that he stated that after settling other claims arising out of the same accident, there was only $250 left under the policy with which to settle with plaintiff; that her mother demanded at least $500 and Knott finally agreed to pay $280, $30 of which he stated he was contributing from his own funds. Miss Shanks' mother gave similar testimony, stating that she was willing to accept only $500 because she believed that the insurance was almost exhausted, but that she demanded that the hospital and doctor's bill also be paid by the insurance company. A settlement of $280 and payment of the hospital and doctor's bills was finally agreed upon and on August 11, 1933, some 10 days later, plaintiff, her mother and Mr. Knott proceeded to the office of Thomas E. Dawson, a justice of the peace, where a judgment of $280 was entered in

favor of plaintiff after she instituted suit by her mother as next friend and issue was joined and testimony taken. Thereupon the judgment was paid and release executed. The sum of $145, representing the hospital and doctor's bills, was also paid to Mrs. Shanks. Plaintiff, the following year, brought the instant suit, this time by Charles Herbert as next friend. Her principal claims are that the settlement was procured by fraudulent representations of the insurance solicitor as to the amount of the policy, that at the hearing before the justice, neither she nor her mother were represented by an attorney although the insurance company had one, that the justice of the peace did not make proper examination of all the facts and circumstances in regard to the liability of defendants and the extent of plaintiff's injuries. She asks that the settlement be declared void and defendants be restrained from interposing the claim of settlement as a defense in a law action to be brought by plaintiff to recover for her injuries. The trial court dismissed the bill of complaint. The case is a close one on the facts and while it would have been far better had the testimony before the justice of the peace been taken down stenographically, so that it could be shown exactly what was said and done, the circuit judge was not in error in dismissing the bill.

Had there been no judicial investigation as to the merits of plaintiff's claim, she being a minor, the judgment would not stand. *Metzner* v. *Newman,* 224 Mich. 324 (33 A. L. R. 98) ; *Moebius* v. *McCracken,* 261 Mich. 409; *Palazzolo* v. *Judge of the Superior Court of Grand Rapids,* 234 Mich. 547; Freeman, Judgments (5th Ed.), § 1347; 15 A. L. R. 667. Where liability is denied, it is the duty of the court to ascertain the chance of recovery. Liability, however, does

not seem to have been denied when the parties appeared before the justice. Consequently, he was not in error in directing his attention only to the question of damages. The real question is whether his investigation on that issue was adequate. Miss Shanks testified that she was duly sworn and questioned all about the accident, and that she told about her scars and her physical condition. Her mother testified that she was sworn and asked if she was satisfied with the settlement, that the justice asked her daughter about how she was hurt and how severe her injuries were, and how old she was. The justice was sworn and stated the parties came in for the purpose of joining issue and having a judgment rendered to carry out the proposed settlement, that he had heard considerable about the accident through the newspapers, but based his conclusions on the proceedings, the testimony and the talk in the courtroom. The justice court, as a rule, is not conducted with the formality of a court of record. There is no stenographer present and informal statements made by the litigants or in their behalf may frequently be admissions. The justice testified that he asked a few questions, not a great many, but that he suggested questions to the attorney for defendants; that he talked to the young lady as to her injuries and told her that it was very fortunate that her face was not scarred up or something of that kind, and that apparently her injuries were not as severe as first supposed; that the attorney for the defendants examined plaintiff as to her injuries publicly in court. The justice also testified:

"Questions were asked in regard to the accident and the personal injuries, and the young lady mentioned some scars she had, and as to whether—the questions were asked as to whether they were satis-

fied with the settlement, and assented to, and I talked a little bit with Mrs. Shanks. * * * We visited a little bit and Mr. Rigney went into the matter pretty thoroughly in detail, and Mr. Knott, I think, asked a question or two, nothing very much, and the statement was made that they were settling for $280 for the young lady's damages, and that there was a further amount of $145 to be paid for doctor and hospital bills, something of that kind, and I asked them both if they were—had any understanding of the matter and they said that they did; as to whether they considered it was a good settlement or not, and they said that they thought it was, and before the proceedings were all through I informed—not to each one individually or either one particularly, that they should understand that they were making a settlement in full, as I understood it, and wanted to know if that was their understanding, and they said that it was, and there was quite a little bit of talk about it pro and con. It was rather an informal hearing in a way, everyone seemed to be pleasant, and we were not standing on ceremony, anybody had something to say, they said it.''

The justice further testified that he did not take any testimony in regard to the accident as it was not the question before him, but that the Shanks were satisfied with the amount of the settlement and that the facts as well as the observations of the physical condition of the young lady at that time made him conclude that it was a good settlement; that he did not consent to the amount of the judgment solely because the parties were satisfied, for if he had not been satisfied himself, he would not have entered the judgment.

The trial judge found that the justice made an investigation of plaintiff's claim and that the proofs indicated the settlement was fair and for the best

interests of the plaintiff, that she spent the money received and was now willing that her attorney speculate on a lawsuit. We believe the judge came to a correct conclusion.

Plaintiff claims error because the court refused to permit the justice to be cross-examined as to his knowledge of the law of imputed negligence as far as it affects a minor. This did not appear to be an issue before the justice. Error is further claimed because the trial judge in his opinion made no finding as to whether there was fraud practiced upon plaintiff by defendants. The adjuster positively testified that he did not make the statements attributed to him in regard to the insufficiency of the insurance. We therefore have the testimony of plaintiff and her mother claiming such fraud and an absolute denial by the adjuster. The trial judge, in finding that the settlement was fair, inferentially denied the claim of fraud.

The decree of the lower court is affirmed, with costs to the defendants.

Potter, C. J., and North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.

The late Justice Nelson Sharpe took no part in this decision.